FILED

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

97 JUN -6 PM 4:08

U.S. DISTRICT COURT
N.D. OF ALABAMA

TYWONIA ORUM,                        }
                                     }
        Plaintiff,                   }
                                     }
v.                                   }        CASE NO. CV 96-B-1107-S
                                     }
STATE FARM MUTUAL                    }
AUTOMOBILE INSURANCE                 }
COMPANY, d/b/a/ STATE FARM           }
INSURANCE COMPANIES,                 }
                                              ENTERED
        Defendant.

                                              JUN 0 6 1997

### MEMORANDUM OPINION

This matter is before the court on the motion of State Farm Mutual Automobile

Insurance Company ("State Farm" or "defendant") for summary judgment, and the motion of

State Farm to strike certain affidavit testimony submitted by plaintiff Tywonia Orum ("Orum"

or "plaintiff"). Upon consideration of the record, the submissions of the parties, the argument

of counsel, and the relevant law, the court is of the opinion that defendant's motion for

summary judgment is due to be granted, and defendant's motion to strike the affidavit

testimony submitted by plaintiff is due to be denied.

This lawsuit arises out of plaintiff's employment at State Farm. Plaintiff alleges, inter

alia, that defendant discriminated against her on account of her race and sex in violation of 42

U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§

2000e-2000e-17 (1994). Defendant responds by denying that it discriminated against plaintiff

based upon any prohibited characteristics and, instead, states that its decisions were based upon

legitimate, nondiscriminatory factors.

22

## FACTUAL SUMMARY

The facts giving rise to this dispute may be briefly stated.  State Farm hired plaintiff on August 24, 1987 as a receptionist in the Roebuck, Alabama Claims Center.  Plaintiff was transferred to a Claims Service Assistant, another clerical position, in the Roebuck Center on March 14, 1992.  Plaintiff held this position until January 3, 1997, at which time she was transferred laterally to her current position of assistant in the "Service First" unit located in the Alabama/Mississippi Regional Office.

With the assistance of State Farm's Tuition Aid Program, Orum received a bachelor's degree in counseling from Samford University in May 1994.  Thereafter, she began competing for entry level professional positions with State Farm.  State Farm has a system whereby openings in entry level professional positions are announced to employees, and those who are interested in seeking the positions must affirmatively express an interest--"post"--for the position.  Once the posting period is closed, the managers responsible for the open positions evaluate the applicants and decide which among them should proceed to the interview stage. Entry level professional positions are open to both incumbent State Farm employees and persons not employed by State Farm ("outside" candidates); outside candidates may be interviewed at the same time as "on board" candidates.  Once the interviews are completed, a selection is made.

During the time frame at issue in this case, Orum posted for sixteen professional positions, six in the auto claims area (these were filled simultaneously under one selection process) and ten in the auto underwriting area (these positions were filled over a two year period).  Five of the underwriting positions were in the Mississippi Division and five were in

2

the Alabama Division. Different decision makers were involved in the auto claims positions and in the different underwriting divisions, and in each instance, plaintiff's supervisors recommended that she be considered; plaintiff, however, was not selected for any of these professional positions.

On April 29, 1996, plaintiff filed a four count complaint in this court alleging the following: (1) that State Farm denied her unspecified "transfers and promotions" because of her race and allowed a racially hostile work environment to exist in violation of Title VII of the Civil Rights Act of 1964 (Count I); that State Farm discriminated against her because of her race "in all aspects of employment" in violation of 42 U.S.C. §1981 (Count II); that State Farm discriminated against her "in all aspects of employment" because of her *sex* in violation of 42 U.S.C. § 1981 (Count III); and (4) that State Farm's behavior towards plaintiff constituted an intentional infliction of emotional distress (Count IV).

## SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex,* 477 U.S. at 322-23; *see* FED. R. CIV. P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . .

3

affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Rule 56 (c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted); *accord Spence v. Zimmerman*. 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## DISCUSSION

### Motion to Strike Affidavits

Rule 56(e) of the Federal Rules of Civil Procedure provides:

> Supporting and opposing affidavits shall be made on personal
> knowledge, shall set forth such facts as would be admissible in

4

> evidence and shall show affirmatively that the affiant is
> competent to testify to the matters stated therein.

FED. R. CIV. P. 56(e).  Thus, all affidavits submitted in support of or in opposition to a

motion for summary judgment must be based on personal knowledge.  In addition, although

the nonmoving party does not have to "produce evidence in a *form* that would be admissible at

trial in order to avoid summary judgment," *Celotex Corp. V. Catrett*, 477 U.S. 317, 324

(1986) (emphasis added), the evidence must be "of a *kind* admissible at trial." *Waldridge v.

American Hoechst Corp.*, 24 F.3d 918, 921 n.2 (7th Cir. 1994).  In other words, the content

or the substance of the evidence must be admissible, even if the evidence is presented in a

form, such as an affidavit, that would not be admissible at trial.  *Thomas v. International

Business Machines*, 48 F.3d 478, 485 (10th Cir. 1995).

Defendant argues that certain portions of the post-deposition affidavit of plaintiff

submitted by her in opposition to the motion for summary judgment should be stricken because

portions of the affidavit contradict plaintiff's prior deposition testimony; are not based on

personal knowledge; contain inadmissible hearsay; or are not relevant.  In paragraph 16,

plaintiff alleges that "[d]uring the interview [for a claims representative trainee position

conducted by Darryl Moorer and Dean Baldwin] I conducted myself in both a professional and

courteous manner, displaying my knowledge about the insurance industry and a variety of

other topics.  I was very comfortable during my interview."  In paragraph 17, plaintiff states:

"I gave precise answers to each question that was asked of me."  Paragraph 20 states, "[I]t is

my belief that during my interview with Darryl Moorer and Dean Baldwin, I was not nervous

5

and did not give short answers to open ended questions." Similarly, in paragraph 22, plaintiff states, "I am an excellent communicator."

The court will not strike these statements but notes that they are conclusory and do not create a genuine issue of material fact. *See Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) ("Summary judgment affidavits cannot be conclusory."); *Hansen v. US*, 7 F.3d 137, 138 (9th Cir. 1993) ("When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact."). Moreover, plaintiff's self-evaluation of her communication skills and her interview performance have no relevance to this dispute, because in the employment context, "[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Evans*, 80 F. 3d at 960-961.

Defendant has also moved to strike portions of paragraphs 5, 9, and 10 of plaintiff's affidavit. In paragraph 5, plaintiff states that as a Claims Service Assistant, "[a] portion of my duties included daily communications with attorneys, rental companies, body shops, claimants, State Farm insureds, State Farm agents, and other insurance companies." Defendant notes that in her deposition, plaintiff gave twelve pages of testimony describing her duties as a Claims Service Assistant and never mentioned that her job duties included communication with attorneys or with anyone else. (*See* Orum Dep. at 64-75). Therefore, defendant argues that this portion of the affidavit should be stricken pursuant to *Junkins v. U.S. Industries, Inc.*, 736 F.2d 656, 656 (11th Cir. 1984), in which the court held that "a district court may find an affidavit which contradicts testimony on deposition a sham when the party merely contradicts its prior testimony without giving a valid explanation." Although the court agrees that this

6

portion of the affidavit could be seen as inconsistent with plaintiff's deposition testimony, because plaintiff's affidavit states that communicating with various parties is only a "portion" of her duties, the court will deny defendant's motion to strike paragraph 5 of plaintiff's affidavit.

In paragraph 9 of her affidavit, plaintiff states that "[at] the present time I am the only support staff person at the Regional office who has had a degree for approximately three years and has not received a promotion." Defendant argues that this statement is not based upon personal knowledge and is necessarily based upon hearsay. (Motion to Strike ¶ 2). Because the court is of the opinion that summary judgment is due to be granted even considering this statement, this portion of the motion to strike will be denied.

Finally, in paragraph 10, plaintiff states that she "ha[s] been told that I am an asset to the team." Defendant asserts that this statement is based upon hearsay. The court agrees that because this statement gives no indication of who made the statement, it would likely be inadmissible. However, plaintiff also submitted a State Farm performance evaluation dated February 22, 1993, in which the evaluator stated that "[b]ecause of Tywonia's efforts and positive attitude in taking directions, she is truly a positive asset to the Roebuck Service Center team." (Pl.'s Evidentiary Submission at Tab 2). In light of this ostensibly corroborating evidence, the court will deny defendant's motion to strike this portion of plaintiff's affidavit as well.

### Motion for Summary Judgment

As a preliminary matter, and as stated earlier, in counts three and four of her four complaint, plaintiff alleges that defendant discriminated against her based upon her sex in

7

violation of 42 U.S.C. § 1981 (Count III), and that defendant's behavior constituted intentional infliction of emotional distress (Count IV). First, with respect to Count III, because 42 U.S.C. § 1981 only applies to discrimination on the basis of race, summary judgment is due to be granted on plaintiff's § 1981 sexual discrimination claim. (*See* 42 U.S.C. § 1981). Second, as to Count IV, on June 27, 1996, the court dismissed plaintiff's claim of intentional infliction of emotional distress. Thus, the court need only address defendant's argument that it is entitled to summary judgment on plaintiff's claims that she was subjected to unlawful discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981.

Although plaintiff alleges race discrimination "in all aspects of employment," including a racially hostile work environment under both Title VII and 42 U.S.C. §1981, she submitted no argument or evidence that she was the victim of race discrimination in any manner other than her non-selection for certain Claims Representative and Underwriter positions. Thus, as plaintiff has conceded all other claims alleged in her complaint, the court turns to a discussion of plaintiff's contention that she was not selected for sixteen professional positions with State Farm because of her race. Under Title VII and 42 U.S.C. §1981, a prima facie case of discrimination may be established with direct evidence of discriminatory intent, statistical proof of a pattern of discrimination, or by circumstantial evidence. *Walker v. NationsBank of Florida, N.A.*, 53 F.3d 1548, 1556-57 (11th Cir. 1995). Because Orum has presented no direct or statistical evidence of discrimination, she must prove her case by circumstantial evidence.

8

In order to establish a prima facie case of discrimination using circumstantial evidence, a plaintiff must satisfy the test set forth by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).[1] Courts have modified the *McDonnell Douglas* model as necessary to ease analysis in a wide variety of settings. In this case, plaintiff must establish: (1) that she is a member of a protected class; (2) that she was qualified for and applied for the promotion; (3) that she was rejected; and (4) that other equally or less qualified employees who were not members of the protected class were promoted. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1539 n.11 (11th Cir. 1997) (citation omitted).

Once a prima facie case is shown, the defendant must articulate a legitimate non-discriminatory reason for its actions. *Combs*, 106 F.3d 1519 at 1528. Defendant's burden, however, has been characterized by the Eleventh Circuit as "exceedingly light." *Perryman v. Johnson Products Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983). "The defendant need not persuade the court that it was actually motivated by the proffered reasons, but it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

"Once defendant states a legitimate reason, plaintiff must show that defendant's articulated reason is merely a pretext and that defendant's true reason for discharging plaintiff was discrimination." *Rollins v. Techsouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). [The plaintiff] may succeed in this either directly by persuading the court that a discriminatory

---

[1] In *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060 (11th Cir. 1994), the Eleventh Circuit stated that "[t]he *McDonnell Douglas* scheme for the allocation of burdens and the order of presentation of proof also applies in § 1981 cases involving discriminatory treatment in employment situations." (citation omitted).

9

reason more likely motivated the employer or *indirectly by showing that the employer's proffered explanation is unworthy of credence*. *Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 256) (alteration and emphasis in original). "[A] plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable." *Howard v. B.P. Oil Co.*, 32 F.3d 520, 526 (11th Cir. 1994).

During the relevant time period, Orum posted for sixteen professional positions at State Farm. Although six of the sixteen positions at issue were filled by African-Americans, plaintiff asserts that she is entitled to pursue claims of race discrimination for all sixteen positions. (*See* Plaintiff's Memorandum at 9-10). In support of this argument, plaintiff cites *O'Connor v. Consolidated Coin Caterers Corp.*, 116 S. Ct. 1307 (1996), an age discrimination case in which the Supreme Court held that the fact that an older worker was replaced with someone within the protected age category (40 years or over) was not necessarily fatal to a claim of age discrimination. In so holding, the Court reasoned that if the replacement were younger than the plaintiff, albeit still over 40, age discrimination can still occur. *Id.* at 1310. In the race discrimination context, however, an African-American is still of the same race as another African-American. The *O'Connor* analysis simply is not applicable to race discrimination. Indeed, the Eleventh Circuit has recently confirmed that as part of a plaintiff's prima facie case of discriminatory failure to promote, a plaintiff must prove that other equally or less qualified employees *who were not members of the protected class* were promoted. *Combs*, 106 F.3d at 1539 n.11 (emphasis added) (citation omitted). Thus, summary judgment is due to be granted as to the six positions filled by African-

10

Americans: Vince Pettus, Derrick Kidd, Jennifer McFarland, Patricia Reese, Richard Moncrief, and Gabrielle Smith.

As to the other ten positions, although the court is not convinced that Orum has established a prima facie case as to these positions, as she is required to show that "other equally or less qualified employees were selected" over her, *Combs*, 106 F.3d at 1539 n.11, the court will assume without deciding that she has. Having found that plaintiff has established a prima facie case as to the ten remaining positions at issue, the court turns to a discussion of each of these positions. For organizational purposes, and because there were different decision makers for (1) the Claims Representative Trainee positions; (2) the Mississippi Division Underwriter Trainee positions; and (3) the Alabama Division Underwriter Trainee positions, the court will divide its discussion into three parts.

(1)    Claims Representative Trainee Positions

In June 1994, State Farm sought to fill six newly created Claims Representative Trainee positions.[2] (Baker Dep. at 8, 9). Orum and approximately twenty-five other individuals applied for these positions. (Supplement to Def.'s Responses to Interrogs. Number 10). Because of the large number of applicants, Divisional Claims Superintendent Jack Baker delegated the interview responsibilities to his management team of Claims Supervisors. (Baker Dep. at 9, 10). After interviewing their assigned candidates, the Claims Supervisors made recommendations to Baker as to whether they thought the candidate should be selected. (Baker

---

[2] Because two of the six successful candidates were African-American, Vince Pettus and Derrick Kidd, plaintiff may only pursue her discrimination claims as to four of the six Claims Representative Trainee positions. (Supplement to Def.'s Responses to Interrogs. Number 10).

Dep. at 9). Baker followed the recommendations of the interviewing teams. (Baker Dep. at 28). The Claims Supervisors who interviewed Orum for these positions were Dean Baldwin (who is white) and Darryl Moorer (who is black). (Orum Dep. at 134-136; Moorer Aff. at ¶¶ 2, 4 ). In addition to Orum, Baldwin and Moorer also interviewed two other candidates: Dwain Boyd and James Stewart. (Moorer Aff. at ¶ 4).

After the interviews were conducted, Moorer concluded and advised Baker that none of the three candidates interviewed should be selected for the available positions. (Moorer Aff. at ¶¶ 5, 6). With respect to Orum, Moorer concluded that she did not interview well. (Moorer Aff at ¶ 5; Baker Dep. at 14, 29; Def.'s Evidentiary Submission, Tab 14). She gave brief responses to open-ended questions and appeared very nervous. (Moorer Aff. at ¶ 5; Def.'s Evidentiary Submission, Tab 14). Poor performance in the interview was a legitimate non-discriminatory reason not to promote Orum to one of the professional positions. *Hill v. Seaboard Coast Line R.R.*, 885 F.2d 804, 808-809 (11th Cir. 1989) (subjective evaluation of communication skills is a valid basis for a promotion decision).

Orum's reply to State Farm's explanation that she was not selected for one of the Claims Representative positions because her interviewers concluded that she did not interview well is that she thought she had a good interview. However, Orum's perception of her own abilities or interviewing skills are simply irrelevant to a claim of intentional race discrimination. "'It is the perception of the decision maker which is relevant,' not the self-assessment of the plaintiff." *Evans v. Technologies Applications and Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996) (citation omitted). Orum also states that since the decision makers had previously worked with her, they knew her qualifications, and should have recommended her

12

for the job. That they did not, in the face of having worked with her, is not evidence of

pretext, however. Finally, that one of the decision makers was black, while not dispositive, is

probative on the issue of whether race discrimination played a part in the decision. *Dudley v.*

*Wal-Mart Stores, Inc.*, 931 F. Supp. 773, 790 (M.D. Ala. 1996) ("Additionally, the

promotion decision was primarily made by a black assistant manager . . . which while not

dispositive, indicates an absence of discrimination."). Based on the foregoing, the court

concludes that plaintiff has failed to overcome her burden to demonstrate pretext. Thus, the

court concludes that summary judgment is due on plaintiff's claims that she was not selected

for one of the six Claims Representative Trainee positions based upon her race.

(2)    Mississippi Division Underwriter Trainee Positions

Since September 1994 Orum has posted for five Underwriting Trainee positions in the

Mississippi Division. (Supplement to Def.'s Responses to Interrogs. Number 10). Marlin

Evans, the Division Manager, was the ultimate decision maker for the positions. (Evans Dep.

at 8). Rich Brown, Underwriting Operation Superintendent for Mississippi, was also involved

in the decision making process for each of the Mississippi Divisions positions at issue.

(Supplement to Def.'s Responses to Interrogs. Number 10).

In September 1994, State Farm posted two Underwriting Trainee positions in the

Mississippi Division. One set of interviews was conducted for the selection of both positions,

and in addition to Orum, three other candidates were interviewed: Shay Anderson (white);

Jennifer McFarland (black) and Greg Baggett (white). (Supplement to Def.'s Responses to

Interrogs. Number 10). Because one of the successful candidates was an African-American,

Ms. McFarland, the court need only discuss plaintiff's claim with respect to the position that

13

was filled by a successful white candidate, Ms. Anderson.  State Farm asserts that Orum was

not selected because she was not the most qualified candidate for either position.  (Brown Dep.

at 63, 64).  Specifically, Ms. Anderson had a Master's Degree in Business Administration and

communicated more effectively than Orum during her interview.  (Brown Dep. at 63-64).

Although plaintiff presented herself well in the interview in that she demonstrated a pleasant

personality and a professional appearance, she was not considered as competitive as Anderson

because she had not obtained a post-graduate degree and her responses to some of the

interview questions were vague.  (Def.'s Evidentiary Submission at Tab 15).  There is no

evidence that race was a factor in the decision not to select Orum.

Approximately one week after Ms. Orum interviewed for the positions received by

Anderson and McFarland, another Underwriting Trainee position became available in the

Mississippi Division.  (Brown Aff. at ¶ 6).  Although Orum and Baggett were considered for

this additional position, they were not required to participate in another interview.  (*Id.* at ¶

6).  In addition to Orum and Baggett, five other candidates competed for this position: Paula

Folino-Downey (white); Brenda Chapman (white); Jennifer Dore (white); Dwayne Wiginton

(white); and Stephen Davis (white).  (Supplement to Def.'s Responses to Interrogs. Number

10).  The successful candidate was Paula Folino-Downey.  (*Id.* at ¶ 9).  According to

defendant, Paula Folino-Downey was selected because she was the most qualified candidate for

the position.  (*Id.* at ¶ 10).  Specifically, Ms. Folino-Downey presented herself well in her

interview, had obtained a Master's Degree in Business Administration, and was already

working in a professional level position as a Claims Representative at State Farm.  (Brown

14

Dep. at 71-72; Brown Aff.). Plaintiff has submitted no evidence to indicate that these were not the true reasons for selecting Paula Folino-Downey for this position.

On or about December 8, 1994, Orum posted for another Underwriting Trainee position in the Mississippi Division. (Supplement to Def.'s Responses to Interrogs. Number 10). In addition to Orum, Jennifer Dore (white) and Jeff Hilborn (white) competed for this position. *Id.* According to Rich Brown, Hilborn was selected for this position because of his advanced higher education (Master's Degree), his past managerial experience in hospital administration, and his excellent interview. (Brown Dep. at 69, 70). In contrast, the decision makers did not find plaintiff interviewed well and her qualifications and experience were not as impressive as Hilborn's. (Def.'s Evidentiary Submission at Tab 16). Rich Brown testified that Orum was not selected for this position because she was not the most qualified candidate. (Brown Dep. at 68, 69; Brown Aff. at ¶ 14). Again, plaintiff has submitted no competent evidence to establish that State Farm's articulated reasons for selecting Hilborn are pretextual.

In October 1996, Orum interviewed for another Underwriting Trainee position in the Mississippi Division. (Supplement to Def.'s Responses to Interrogs. Number 10). Other candidates considered for this position were Kasee Holley (white); Amy Grant (white); Melissa Willis (white); and Donna Headley (white). Again, Rich Brown testified that Headley was selected because she was the most qualified candidate for the position. (Brown Dep. at 74-75). Headley was an incumbent employee who had already reached State Farm's second professional level (MA2) as a health claims examiner. (Brown Dep. at 76, 77; Evans Dep. 56, 57).

15

Plaintiff asserts in her brief that each of the successful candidates in the Mississippi Division were persons "outside the company with less experience." There is no record citation for this assertion. In fact, three of the five candidates selected in this region (one of whom is black) were incumbent State Farm employees. Furthermore, Folino-Downey and Headley were already in professional level positions at State Farm which clearly set them apart from plaintiff. (Brown Dep. at 71-71, 76, 77; Brown Aff.; Evans Dep. at 55, 57). While it is true that Anderson and Hilborn were outside applicants, both had Master's Degrees, and Hilborn was a manager at the time he competed against Orum. (Brown Dep. at 63-64, 69, 70).

Plaintiff suggests that it is bad business judgment to favor persons with prior professional-level experience for a professional-level "trainee" position. That State Farm chose to do so, however, is not evidence of discrimination: "a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where, as here, the reason is one that might motivate a reasonable employer." *Combs*, 106 F.3d at 1543.

(3)     Alabama Division Underwriter Trainee Positions

During the relevant time period, Orum posted for five Underwriter Trainee positions in the Alabama Division. This division is further divided into two districts: North Alabama and South Alabama. (Supplement to Def.'s Responses to Interrogs. Number 10). Of the two positions sought by Orum in the North Alabama District both were filled by African-Americans, Richard Moncrief and Pat Reese. *Id.* Of the three Underwriter Trainee positions in the South Alabama District, one was filled by an African-American female, Gabrielle Smith, one by a white female, Rose Marie Bruno, and one by a white male, David Willis.

16

(Supplement to Def.'s Responses to Interrogs. Number 10). Thus, because three of the five Alabama Division Underwriter positions were filled by African-Americans, the court will only examine plaintiff's allegations of discrimination with respect to the two South Alabama positions that were filled by Rose Marie Bruno ("Bruno") and David Willis ("Willis").

The Underwriter Operations Superintendent for the South Alabama District, David Merriman, made the final recommendation of who would receive these positions, although his recommendation required the approval of his supervisor. (Merriman Dep. at 5, 8, 13). According to Merriman, Bruno was selected, in part, because she was already working in a professional position with State Farm. (Merriman Dep. at 72-73). At the time of the selection, she supervised the health records unit and claim typists, positions akin to the one held by plaintiff at the time she was competing with Bruno. (*Id.* at 84-85). Bruno's department was being transferred to State Farm's office in Louisiana and the position she held in Alabama was being abolished, making her move to an Underwriter Trainee position a lateral transfer. (*Id.* at 73, 81-82). Moreover, Bruno performed well in her interview. (*Id.* at 72-73). By contrast, in her interview, Orum did not demonstrate the depth of knowledge of the underwriting job that Merriman expected of someone seeking a professional position. (*Id.* at 73, 104-05).

Plaintiff notes that she and Bruno previously competed for a position awarded to Pat Reese, who is African-American, and that they were both given similar explanations why they were not selected. As a result, plaintiff theorizes that she and Bruno had "equal" qualifications. However, merely because Orum and Bruno were deemed less qualified than

17

Reese does not mean that they had equal qualifications. Bruno, like Reese, was already in a professional level position at State Farm. (Merriman Dep. at 72-73).

The remaining Alabama position at issue was filled by David Willis in the summer of 1995. (Supplement to Def.'s Responses to Interrogs. Number 10). David Merriman testified that Orum was not selected for the position because she did not distinguish herself in the interview. In particular, she "did not seem to have a very good understanding of the job applied for nor the issues affecting State Farm." (Evidentiary Submission at Tab 18). David Willis, on the other hand, impressed Merriman in his interview:

> Mr. Willis, during the course of the interview, demonstrated very sharp communication skills. He was energetic in his approach to the interview. His responses to the questions posed were very pertinent and indicated a good understanding of the position for which he was applying.

(Merriman dep. at 24).

Orum argues that State Farm's reasons for selecting David Willis, another incumbent employee, were pretextual considering her "knowledge of the insurance industry." However, the only evidence of her "knowledge of the insurance industry" is a self-serving allegation in her affidavit. As the Ninth Circuit stated in *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993), "[w]hen the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." Indeed, plaintiff does not even explain what kind of "knowledge" she claims to have.

18

Even if the court assumes that Orum was as qualified as Willis, a defendant "does not violate Title VII by choosing a more qualified *or an equally qualified, white candidate* over a qualified black candidate, unless it did so with discriminatory intent." *Dudley v. Wal-Mart Stores, Inc.*, 931 F. Supp. 773, 790 (M.D. Ala. 1996) (emphasis added) (citing *Burdine v. Texas Dept. Community Affairs*, 450 U.S. 248, 259 (1981)). Here, there is a complete absence of any evidence that defendant acted with discriminatory intent.

Summary of promotion decisions

Orum has not presented a scintilla of evidence to establish that State Farm failed to select her for any of the positions at issue because of her race. Orum's principal argument seems to be that since she worked for State Farm for seven years as a *clerical* employee, she should be given preference for a *professional* position over outside candidates, notwithstanding their superior qualifications. However, "[m]ere seniority does not support a finding that plaintiff was more qualified for a different job." *Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir. 1994). In essence, Orum is simply criticizing the factors used in making these selections. However, "federal courts do not sit to second-guess the business judgment of employers . . . . Stated somewhat differently, a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least where, as here, the reason is one that might motivate a reasonable employer." *Combs*, 106 F.3d at 1543.

As additional evidence of pretext, plaintiff points to her "prior management experience." Plaintiff's prior supervisory experience was minimal, however. She testified that when she was a full-time student between 1982 and 1984, she also worked part-time at a

19

company in Birmingham called Coordinating Planning and Associates. (Orum Dep. at 13-18). At Coordinating Planning, plaintiff was a part-time telephone solicitor and she had some responsibilities for coordinating the work of other telephone solicitors. (Orum Dep. at 34). Plaintiff's supervisory experience ended there. After leaving this part-time job in 1984, plaintiff was employed full-time in a receptionist position at Fashion et Cetera beauty salon (Orum Dep. at 17-20), where she worked until she was hired as a clerical employee for State Farm in 1987. (Orum Dep. at 21, 37). Thus, at the time she was competing for professional positions at State Farm (1994-1996), Orum had not performed any "supervisory" duties in over ten years.

An additional argument offered by plaintiff is that because different (although legitimate) factors caused her to be judged less qualified than the other candidates for different positions, this somehow casts doubt on the veracity of defendant's articulated reasons. The court disagrees. Had plaintiff been competing against the same candidates with the same decision makers in each instance, this argument might have force. Because, however, these were different decisions, made by different decision makers, who each time were considering a different pool of candidates, one would expect different factors to be determinative.

The Eleventh Circuit has recognized that courts "do not sit as a super personnel department that reexamines an entity's business decisions." *Alphin v. Sears Roebuck & Co.*, 940 F.2d 1497, 1501 (11th Cir. 1991) (citation omitted). "If the employer selects the person that it believes is best qualified, an argument of pretext ordinarily will fail." *Clark v. Huntsville Bd. Of Educ.*, 717 F.2d 525, 527 (11th Cir. 1983). In the present case, plaintiff

has failed to offer probative evidence that her race, in any way, played a role in defendant's decision not to hire her for the sixteen positions at issue.

## CONCLUSION

Based upon the foregoing analysis, the court holds that there is no genuine issue as to any material fact and defendant is entitled to a judgment as a matter of law. Accordingly, an order granting defendant's motion for summary judgment, and denying defendant's motion to strike shall be entered contemporaneously herewith.

**DONE** this 6th day of June, 1997.

**SHARON LOVELACE BLACKBURN**
United States District Judge

21